IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LINDA SMITH, as Personal Representative on behalf of the Legal Heirs of RONNIE SMITH, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>FORD MOTOR COMPANY, et al.,<br><br>Defendants | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:08-cv-630<br><br>Judge Dee Benson |

This matter is before the court on defendant Ford Motor Company's Daubert Motion to Exclude Expert Testimony of Samuel Hammar, M.D. (Dkt. No. 96.) The court heard oral argument on the motion on November 13, 2012. Having considered the parties' arguments, memoranda, and the relevant law, the court enters the following Memorandum Decision and Order.

**BACKGROUND**

Ronnie and Linda Smith, husband and wife, filed this asbestos personal injury action on July 15, 2008, in the Third District Court for the State of Utah. Ronnie Smith passed away on

November 3, 2009, and the case is now being prosecuted by Linda Smith as plaintiff's representative on behalf of Ronnie Smith's heirs. The case was removed to this court on August 20, 2008.

In this action, plaintiff Linda Smith contends that Ronnie Smith was injured as a result of exposure to asbestos products which contributed to his development of mesothelioma. Plaintiff is suing numerous parties, including Ford Motor Company, which allegedly manufactured asbestos-containing products which exposed plaintiff to unknown doses of asbestos for unknown durations.

In his deposition, plaintiff Ronnie Smith stated he was exposed to asbestos-containing Ford brake parts while working as a part-time service station attendant at a full-service gas station in Cedar City, Utah, from August 1966 to May of 1968, a period of approximately 19 months. Although plaintiff offered that "he didn't know for sure" with respect to the number of times he changed brake pads on Ford vehicles, plaintiff asserts that during his 19 months of employment as a service station attendant, he may have changed brake pads on Ford vehicles on as many as seven occasions–and on one non-work related occasion in 1963 when he changed brake pads on his personal Ford automobile. According to Mr. Smith, the process of changing brake pads consisted of lifting the vehicles with a hydraulic-hoist and removing the vehicle's wheels with an air wrench. Thereafter, plaintiff would blow an accumulation of a black or gray dust-like substance away from the brake pad location with an air hose. Plaintiff claims the air hose caused the dust to enter the air which he then inhaled. After plaintiff removed the old brake pads and cleared the dust from the work zone, he replaced the brake pads, thereby completing

the process. Plaintiff asserts that on the occasions he performed this process on Ford brand vehicles, the brake pads he was changing contained asbestos; and consequently, the dust he inhaled through the process of changing the brake pads exposed him to asbestos and caused his injuries.

## DISCUSSION

Dr. Hammar's opinion is based on a theory of causation that has variously been described as the "every exposure" or "every breath" theory, which holds that each and every exposure to asbestos by a human being who is later afflicted with mesothelioma, contributed to the formation of the disease.

Defendant asserts that this theory is without scientific foundation, that it is mere speculation designed for litigation, and that it is inadmissible pursuant to Rule 702 of the Federal Rules of Evidence and the standard set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

Having now reviewed the parties' briefing and the extensive number of exhibits, which includes prior court opinions, law review articles, and the declarations of numerous science and medical experts, including Dr. Hammar, the court agrees with the defendant's position. Dr. Hammar's opinion is, as a matter of law, unsupported by sufficient or reliable scientific research, data, investigations or studies, and is inadmissible under Rule 702.

Furthermore, even if it were deemed admissible under Rule 702, the court would exclude Dr. Hammar's testimony pursuant to Rule 403 of the Federal Rules of Evidence, because the probative value of such unsupported speculation by Dr. Hammar is substantially outweighed by

the danger of unfair prejudice, as well as being confusing, and presenting a danger of misleading the jury. In reaching this conclusion, the court agrees with the growing number of published opinions from other courts that have reached a similar result: that the every exposure theory as offered as a basis for legal liability is inadmissible speculation that is devoid of responsible scientific support. When carefully examined, it becomes clear that Dr. Hammar's proffered testimony is precisely the kind of testimony the Supreme Court in General Electric Co. v. Joiner, 118 S.Ct. 136 (1997), observed as being nothing more than the "ipse dixit of the expert." Id. at 519.

The arguments in support of the court's holding are ably expressed in the opening and reply briefs of the defendant, and those briefs are adopted by the court, as well as is the expert opinion of Dr. Mark Roberts, which the court finds to be a well-reasoned examination of the standard Daubert factors most closely associated with the relevant medical scientific community. (See Def.'s Mem. in Supp. of Daubert Mot. to Exclude Expert Test. of Samuel Hammar, M.D., Def's Reply Mem. in Supp. of Daubert Mot. to Exclude Expert Test. of Samuel Hammar, M.D., Def.'s Mem. in Supp. of Daubert Mot. to Exclude Expert Test. of Samuel Hammar, M.D., Ex. 2, Mark A. Roberts M.D. Ph.D., Aff.) Consistent with those arguments, the court's reasons for rejecting Dr. Hammar's opinion include the following:

   1.   **The every exposure theory is not based on sufficient facts or data.**

The every exposure theory does not hold up under careful examination. It is questionable whether it can even properly be called a theory, inasmuch as a theory is commonly described as a coherent collection of general propositions used to describe a conclusion, and while there are

some general propositions used by Dr. Hammar, they fall far short of supporting the legal liability he attempts to reach with them.  Rule 702 and <u>Daubert</u> recognize above all else that to be useful to a jury an expert's opinion must be based on sufficient facts and data.  The every exposure theory is based on the opposite: a lack of facts and data.  When Dr. Hammar states that he cannot rule out any asbestos exposure as a possible cause of an individual's mesothelioma he is confirming the fact that there are insufficient facts and data to establish what minimum dosage levels of asbestos are required to cause cancer in a human being.  The fact is the medical community at present does not know the answer to the all-important question regarding legal causation, how much is too much?

     Dr. Hammar seeks to base his causation opinion not on the thin reed that he cannot rule any exposure out, but on the opposite: he rules all exposures "in," boldly stating that Mr. Smith's mesothelioma "was caused by his total and cumulative exposure to asbestos, <u>with</u> <u>all</u> exposures and all products playing a contributing role." (Hammar Decl. at 17, ¶ 17.)  This asks too much from too little evidence as far as the law is concerned.  It seeks to avoid not only the rules of evidence but more importantly the burden of proof.  It is somewhat like a homicide detective who discovers a murdered man from a large family.  Based on his and other detectives' training and experience the detective knows that family members are often the killer in such cases.  When asked if there are any suspects the detective says he cannot rule out any of the murdered man's relatives.  This would be reasonable, but it would not allow the detective to attribute legal liability to every family member on the basis of such a theory.  That is, in effect, what Dr. Hammar and plaintiff are trying to do here, without <u>any</u> underlying data as to the amount of

chrysotile asbestos fibers found in Ford brakes that are needed to cause cancer in a human being.

Dr. Hammar wants to be allowed to tell a jury that all of the plaintiff's <u>possible</u> exposures to asbestos during his entire life were contributing causes of the plaintiff's cancer, and, therefore, sufficient to support a finding of legal liability as to the manufacturer of each asbestos containing product, without regard to dosage or how long ago the exposure occurred. Just because we cannot rule anything out does not mean we can rule everything in.

### 2. Legal liability must rest on proof of specific causation.

Dr. Hammar's every exposure theory is supported by certain general conclusions that are not in dispute. These are: (1) asbestos fibers, both amphibole and chrysotile, are carcinogenic, (2) the majority (+/- 80%) of mesothelioma cancers are caused by asbestos exposure, (3) prolonged and large exposures to asbestos in certain types of occupations and industries (e.g., mines, shipyards) satisfy the legal requirement of "substantial contribution" to allow a jury to determine legal causation in such large-dosage cases, and (4) there is no known minimum dose of asbestos that is required to cause cancer in a human being. Indeed, the vast majority of Dr. Hammar's declaration dwells on these matters about which the parties have no dispute.

What is missing from Dr. Hammar's proposed testimony is the necessary research and data to show that Mr. Smith's six alleged exposures to asbestos based on six brake jobs in the 1960s constitutes proof of sufficient exposure to cause Mr. Smith's cancer on its own (which plaintiff has never contended) or that such exposure amounted to more than an insignificant or de minimus factor in the development of the disease that afflicted Mr. Smith forty years after

those exposures.

Dr. Hammar cites to no studies, reports, examinations, or data of any kind to show that the alleged dust that Mr. Smith allegedly breathed in during those six brake jobs was sufficient to be a contributing cause, substantial or otherwise, to the development of Mr. Smith's cancer. He points to no research or findings that even suggest that the amount of chrysotile fibers that one would expect to find in the alleged brake dust associated with those incidents would cause cancer, let alone how many of such fibers would still be carcinogenic after the brakes had been used long enough to need to be replaced. Dr. Hammar cites to no such studies because there are none.

Dr. Hammar's testimony does virtually nothing to help the trier of fact decide the all-important question of specific causation. His opinions are based solely on his belief that he should not rule out any exposure as a contributing cause. Accordingly, with regard to the most basic purpose of Rule 702 – that the expert's opinion should be helpful to the jury – Dr. Hammar's testimony fails.

Beyond the almost complete lack of facts or data to support specific causation, Dr. Hammar's testimony also appears on its face to be inconsistent. He tells us on page 4 of his declaration that "I do not believe every asbestos fiber an individual breathes into their lungs contributes to the development of mesothelioma," and on page 5 that "it is not possible to specifically identify an individual fiber from the individual's occupational, non-occupational, or bystander exposure that caused the cellular events that led to the development of mesothelioma," yet concludes his opinion on page 17 with the bold declaration that "[i]n my opinion, the

information referenced in my report is sufficient for me, as a practicing pathologist to come to the specific causation determination to a reasonable degree of medical certainty that each of defendant's product [sic] was a contributing cause in the development of Mr. Smith's mesothelioma and death." Hammar Decl. at 4-5, 17

      **3.**      **Dr. Hammar's and Plaintiff's references and citations are, for the most part, irrelevant.**

In his declaration, Dr. Hammar cites to numerous scholarly studies and articles in support of his testimony. Upon even a cursory review, virtually all of these sources are either irrelevant or of little assistance to the court in providing support for the admissibility of Dr. Hammar's opinions. For the most part they only reinforce the general undisputed principles discussed above.

The same is true for the majority of plaintiff's memorandum in support of Dr. Hammar's testimony. All of the separate bullet-points from pages 6 to 14 relate to large scale exposures of asbestos in mills and plants and other work sites that have nothing in common with this case.

      **4.**      **The scientific literature and studies that exist do not support Dr. Hammar's views.**

Separate and apart from the lack of any reliable scientific methodology or data that supports Dr. Hammar's opinion, the research that has been done contradicts his point of view. Chief among these are the tests that have been conducted to determine if there is any greater incidence of mesothelioma cancers among auto mechanics than in the general population. All of these studies have shown no statistically significant difference.

Plaintiff discounts these studies as worthless because they were funded by asbestos

manufacturers, but has not shown them to be flawed or fraudulent. And perhaps more to the point, neither plaintiff nor his expert reference any studies to the contrary.

> **5.   Numerous courts have examined the every exposure theory and found it lacking under <u>Daubert</u> and Rule 702.**

Numerous courts have examined and rejected expert testimony attempting to assert causation without assessing the dose and held the every "exposure theory" lacking under Daubert and Rule 702. These include:

<u>Moeller v. Garlock Sealing Technologies, LLC</u>, 660 F.3d 950, 952 (6th Cir. 2011)

<u>Lindstrom v. A-C Prod. Liab. Trust</u>, 424 F.3d 488 (6th Cir. 2005)

<u>Wills v. Amerada Hess Corp.</u>, 379 F.3d 32, 40,53 (2d Cir. 2004)

<u>Borg-Warner Corp. v. Flores</u>, 232 S.W.3d 765, 774 (Tex. 2007)

<u>Georgia-Pac. Corp. v. Stephens</u>, 239 S.W.3d 304, 321 (Tex. App. 2007)

<u>Smith v. Kelly-Moore Paint Co., Inc.</u>, 307 S.W.3d 829, 839 (Tex. App. 2010)

<u>Butler v. Union Carbide Corp.</u>, 310 Ga. App. 21, 712 S.E.2d 537 (2011)

<u>Betz v. Pneumo Abex, LLC</u>, 44 A.3d 27, 58 (Pa. 2012)

<u>In re Toxic Substances Cases</u>, A.D. 03-319, 2006 WL 2404008 (Pa. Com. Pl. Aug. 17, 2006)

This court agrees with the general assessment of these various state and federal courts that the every exposure theory does not qualify as admissible expert testimony. The <u>Butler</u> court summed up expert testimony regarding the every exposure theory accurately by stating that an expert's "any exposure theory is, at most, scientifically-grounded speculation: an untested and potentially untestable hypothesis." <u>Butler v. Union Carbide Corp.</u>, 310 Ga. App. 21, 43, 712 S.E.2d 537, 552 (2011), cert. denied (Oct. 17, 2011)

## **CONCLUSION**

For the foregoing reasons, Ford Motor Company's Daubert Motion to Exclude Expert Testimony of Samuel Hammar, M.D. is GRANTED.

DATED this 18th day of January, 2013.

Dee Benson
United States District Judge